[Cite as *State v. Mathis*, 2014-Ohio-1841.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

## JOURNAL ENTRY AND OPINION
### No. 100342

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## GREGORY MATHIS

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CR-11-557923-A and CR-13-575173-A

**BEFORE:** McCormack, J., Boyle, A.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** May 1, 2014

**ATTORNEY FOR APPELLANT**

Susan J. Moran
55 Public Square
Suite 1616
Cleveland, OH 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By: Milko Cecez
Assistant County Prosecutor
9th Floor, Justice Center
1200 Ontario Street
Cleveland, OH   44113

TIM McCORMACK, J.:

{¶1} Defendant-appellant, Gregory Mathis, appeals from a judgment of the Cuyahoga County Court of Common Pleas that convicted him of attempted felonious assault and probation violation and sentenced him to a consecutive sentence of 46 months for these offenses. Mathis claims his guilty plea was not knowing, voluntary, or intelligent, and the trial court abused its discretion in not allowing him to withdraw his plea. He also claims the trial court's sentence was motivated by "vindictive retaliation." Finding no merit to the claims after a careful review of the record, we affirm the trial court's judgment.

## Substantive Facts and Procedural History

{¶2} Mathis engaged in an altercation with his wife when he attempted to retrieve his personal items from her after the couple separated. During the altercation, he slapped his wife twice, injuring her. He was charged with kidnapping, attempted felonious assault, and domestic violence. Because he was on probation for a previous menacing-by-stalking case while this incident occurred, he was also charged with probation violation.

{¶3} At a plea hearing, Mathis pleaded guilty to attempted felonious assault, a third-degree felony, and domestic violence, a fourth-degree felony,[1] and the kidnapping count was nolled. The court then ordered a mitigation-of-penalty report and a presentence investigation report for sentencing purposes.

---

[1] The domestic violence offense was a fourth-degree felony due to a prior conviction of meaning by stalking.

**{¶4}** At the sentencing hearing, Mathis's counsel pleaded for lenience, stating that Mathis suffered emotional trauma due to the loss of a child 26 years ago. His counsel also stated that Mathis needed mental health counseling for his lack of impulse control. The state requested a maximum sentence, pointing out that Mathis had 19 prior convictions for drug and theft offenses from 1990 to 2013, and that he was on probation for his conviction of menacing by stalking of the same victim when he committed the instant offenses. The court imposed a concurrent term of 18 months each on attempted felonious assault and domestic violence. It also imposed a ten-month term on the probation violation case. As the court proceeded to make the statutory findings for consecutive sentences for these two cases, Mathis interrupted the proceeding, lashing out at his wife, who was in the courtroom. He shouted:

> Stinkin' bitch, I'm gonna' kill you when I get out. My car and everything, she done took my car, my life, my job, everything. I'm gonna kill your black ass. God damn. Now that's on the record. That's on record. Your ass gonna die when I get out. My whole life is destroyed. Stinkin' bitch, I'm gonna kill you, bitch ass. I'm gonna' kill that bitch. My whole life is destroyed because of your dumb ass.

**{¶5}** As he was removed from the courtroom, Mathis continued to threaten his wife, shouting, "You better leave the State of Ohio, bitch. I swear I'm gonna kill you. I'm gonna kill that goddamn bitch. I'm gonna kill that black bitch. Tell that bitch I'm gonna kill her."

**{¶6}** When the sentencing hearing resumed the next day, the court noted that it was informed by a deputy that after Mathis was removed from the courtroom, he continued to make threats against his wife for another 20 minutes. Considering the conduct Mathis

displayed in court and his lengthy criminal record, the court found that consecutive sentences are "absolutely" necessary to protect the public from future crimes and to punish him, and not disproportionate to the seriousness of his conduct, and further that Mathis committed the current offense while on community control in a prior case. The court decided to impose the maximum 36-month term, instead of the original 18-month term, on the merged attempted felonious assault and domestic violence.

{¶7} Mathis's counsel asked the court to reconsider the increased punishment. The court explained that Mathis's threats against the victim in open court and his continued threatening conduct afterwards caused it to believe that the minimum sentence originally imposed would undermine the sentence purposes and principles.

{¶8} The transcript then reflects a recess, and when the case came back on the record, Mathis's counsel reported to the court that "during sentencing Mr. Mathis indicated to counsel that he wanted to discuss the possibility of vacating his plea." Counsel did not give reasons for Mathis's change of heart. The court denied the oral motion to withdraw the guilty plea.[2] Mathis now appeals, raising three assignments of error for our review.

### Validity of the Guilty Plea

{¶9} Under the first assignment of error, Mathis asserts his plea was invalid because he was represented by counsel "who did not actively pursue a defense with" him,

---

[2] The court, however, agreed to entertain a written motion to withdraw and any briefing before ordering the sentence into execution. The motion and/or brief was never filed.

and because he was coerced by the trial court "under threat of additional charges and a longer sentence."

**{¶10}** To ensure that a defendant enters a plea knowingly, voluntarily, and intelligently, a trial court must engage in an oral dialogue with the defendant in accordance with Crim.R. 11(C)(2). *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996). Crim.R. 11(C)(2) requires that a trial court determine from a colloquy with the defendant whether the defendant understands (1) the nature of the charge and maximum penalty, (2) the effect of the guilty plea, and (3) the   constitutional rights waived by a guilty plea.

**{¶11}** In this case, Mathis does not complain that the trial court failed to explain his constitutional rights or the charges he was pleading guilty to.  Rather, he claims his plea was not voluntary because the trial court coerced him.

**{¶12}** Our reading of the sentencing transcript shows that the trial court engaged Mathis in an extended colloquy prior to the acceptance of his guilty plea.  At the beginning of the dialogue, Mathis expressed dissatisfaction with his counsel's representation, claiming counsel was "not preparing a defense."  The court explained to Mathis how a plea bargain typically worked and expressed its confidence in counsel's ability in handling the matter. His counsel then informed the court that she advised Mathis to take the plea bargain because she had learned from the state that it was considering reindicting Mathis for more serious charges based on additional facts surrounding the incident.  The prosecutor confirmed the possibility of a reindictment for robbery and felonious assault.  The court then explained to Mathis he should be aware that the plea bargain might be his best option in light of the

possibility of a reindictment.  The court, however, made it clear that the choice was Mathis's, advising him, "I'll  keep saying * * * you have a right to maintain your plea of not guilty and go forward with trial. * * * I don't want you to construe the comments I'm saying to you as in any way my saying to you you better take this plea or not or otherwise."

{¶13} After additional dialogue, Mathis indicated he was ready to "get this over." Before accepting his plea, the trial court asked him about his age, years in school, mental capacity, and asked him if anyone had made any threats or promises to induce his plea. Mathis stated the decision to plead was solely his.  He also answered affirmatively when asked if he was currently satisfied with counsel's services.  The court explained to him the nature of the charges against him and the maximum exposure for his offenses, and the various constitutional rights he gave up by pleading guilty.  After stating it was satisfied that Mathis was entering his plea knowingly, voluntarily, and intelligently, the court accepted his guilty plea.

{¶14} Our review of the extensive plea colloquy thus indicates Mathis's plea of guilty was not anything but knowing, intelligent, and voluntary.  There is not any indication that the trial court induced his guilty plea by false promises or threats.  The trial court's engagement in this plea matter did not lead Mathis to believe he could not receive a fair trial if he chose not to plead guilty.  Indeed, on his oral motion to withdraw the guilty plea after his sentence was pronounced, Mathis gave no reasons for his desire to withdraw the plea, neither did his counsel file a brief later setting forth grounds for a withdraw of the plea.

Rather, the claim of coercion by the trial court is raised for the first time on appeal. Discerning no coercion from our reading of the plea transcript, we find the first assignment of error without merit.

## Motion to Withdraw the Guilty Plea

{¶15} Under the second assignment of error, Mathis argues the trial court erred in not allowing him to withdraw his guilty plea.

{¶16} Different standards govern a motion to withdraw the guilty plea, depending on whether the motion is raised before or after sentencing. Crim.R. 32.1 provides that "[a] motion to withdraw a plea of guilty * * * may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." "[A] presentence motion to withdraw a guilty plea should be freely and liberally granted." *State v. Boswell*, 121 Ohio St.3d 575, 2009-Ohio-1577, 906 N.E.2d 422, ¶ 1. On the other hand, a defendant who moves to withdraw his plea after the imposition of sentence "has the burden of establishing the existence of manifest injustice." *State v. Smith*, 49 Ohio St.2d 261, 361 N.E.2d 1324 (1977), at paragraph one of the syllabus. Either way, a motion made pursuant to Crim.R. 32.1 is "addressed to the sound discretion of the trial court, and the good faith, credibility and weight of the movant's assertions in support of the motion are matters to be resolved by that court." *Smith* at paragraph two of the syllabus.

{¶17} Here, the sentencing transcript reflects that after the court pronounced the sentence from the bench in the resumed proceeding, the court took a recess. When the case

was back on the record, Mathis's counsel reported to the trial court that "during sentencing Mr. Mathis indicated to counsel that he wanted to discuss the possibility of vacating his plea." Two pages later, the transcript also reflects a statement by the court that Mathis's counsel had indicated to the trial court earlier that it was an "oversight" of counsel not to bring to the court's attention at the *beginning* of the resumed sentencing procedure the issue of Mathis's desire to withdraw his guilty plea.

{¶18} Regardless of when Mathis decided to withdraw his plea, what is clear from the record is that Mathis's counsel moved to withdraw his plea only *after* the court pronounced his sentence. The initial question is, therefore, whether a motion to withdraw a guilty plea raised after a sentence is imposed but before the sentence is journalized should be treated as a presentence or postsentence motion.

{¶19} In *State v. Wyley*, 8th Dist. Cuyahoga No. 78315, 2001 Ohio App. LEXIS 1155 (Mar. 16, 2001), the defendant similarly made an oral motion to vacate the guilty plea after the trial court pronounced its sentence, but before the sentence was journalized. This court treated appellant's motion as a postsentence motion and applied the "manifest injustice" standard. *Id.* at *4.

{¶20} This court explained that "if a plea of guilty could be retracted with ease after sentence, the accused might be encouraged to plead guilty to test the weight of potential punishment, and withdraw the plea if the sentence were unexpectedly severe." *Wyley* at *4-5, citing *State v. Peterseim*, 68 Ohio App.2d 211, 428 N.E.2d 863 (8th Dist.1980), quoting *Kadwell v. United States*, 315 F.2d 667, 670 (9th Cir.1963). "Postsentence motions

to withdraw guilty pleas are not freely granted because that would allow defendants to withdraw their pleas when unfavorable sentences are received." *Wyley* at \*4, citing *State v. Mushrush*, 135 Ohio App.3d 99, 107, 733 N.E.2d 252 (1st Dist.1999). *See also State v. Harris*, 8th Dist. Cuyahoga No. 89559, 2007-Ohio-6080, ¶ 6; *State v. Welker*, 8th Dist. Cuyahoga No. 83252, 2004-Ohio-1132, ¶ 7.

**{¶21}** This court emphasized furthermore in *Wyley* that "case law allowing the carte blanche withdrawal of guilty pleas after the court pronounced sentence would substantially affect the plea bargaining process and erode the court's ability to exercise its discretion in imposing sentence." *Wyley* at \*5.

**{¶22}** Here, in the oral motion to withdraw, Mathis's counsel did not give any reasons for Mathis's desire to withdraw his guilt plea. On appeal, for the first time, Mathis claims the trial court coerced him into entering the guilty plea. Our careful reading of the record does not indicate that Mathis's plea of guilty was anything but knowing, intelligent, and voluntary, nor does it reflect that the trial court coerced his guilty plea. The transcript shows the trial court limited its role to explaining the options available to Mathis and the risk he faced from the possibility of a reindictment for more severe charges. Nothing about the trial court's statements conveyed a message that going to trial would be futile or that his sentence after a trial would be greater than if he pled guilty. Thus, we do not find the trial court's participation in the plea colloquy coercive.

**{¶23}** Rather, from our reading of the transcript, it appears Mathis simply had a change of heart regarding pleading guilty because he received a more severe sentence than

he expected. The court will not permit a defendant to withdraw his guilty plea merely because he receives a harsher penalty than he subjectively expected. *State v. Thomas*, 8th Dist. Cuyahoga No. 85294, 2005-Ohio-4145, ¶ 5, citing *State v. Conaway*, 4th Dist. Highland No. 94CA845, 1994 Ohio App. LEXIS 5180 (Nov. 10, 1994). "A mere change of heart" regarding a guilty plea and the possible sentence is insufficient justification for the withdrawal of a guilty plea." *Ohio v. Westley*, 8th Dist. Cuyahoga No. 97650, 2012-Ohio-3571, ¶ 7, citing *State v. Drake*, 73 Ohio App.3d 640, 645, 598 N.E.2d 115 (8th Dist.1991). As our review of the case law indicates, the courts frown upon allowing a defendant to plead guilty to test the potential punishment and withdraw when the sentence was unexpectedly severe.

{¶24} Consequently, the trial court did not abuse its discretion in denying Mathis's motion to withdraw the guilty plea, as there is no manifest injustice to correct pursuant to Crim.R. 32.1. The second assignment of error lacks merit.

### Whether Trial Court Acted in "Vindictive Retaliation"

{¶25} Under the third assignment of error, Mathis claims the trial court acted in "vindictive retaliation" when it lengthened his sentence after his outburst. Mathis likens this case to a resentencing of a defendant following a successful appeal and claims a presumption of vindictiveness arises when the same judge imposes a harsher sentence following a successful appeal, citing *North Carolina v. Pearce*, 395 U.S. 711, 725, 89 S.Ct. 2072, 23 L.Ed. 656 (1969).[3]

---

[3]Mathis also cites former R.C. 2929.51, which provided the trial court with authority to modify

**{¶26}** The analogy of this case to a resentencing following an appeal is inapt. The sentencing proceeding in this case was abruptly interrupted by Mathis's death threats against the very victim he was charged with assaulting. When the proceeding resumed, the trial court, within its discretion, took into account the egregiousness of Mathis's actions and sentenced him to a longer term within the statutory range of his offenses. The court noted its heightened obligation to protect the victim and the public in light of the brazenness of the defendant's conduct. Our reading of the record does not reflect vindictiveness of the trial court, presumed or otherwise. The third assignment of error lacks merit.

**{¶27}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

---

a sentence before its execution under certain situations. Former R.C. 2929.51 stated that after sentencing, up to the time the defendant is delivered to the institution where he is to serve his sentence, the court may suspend the sentence and place the defendant on probation or impose a more lenient sentence. This statute had been appealed and would have no application in this case in any event.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the

Rules of Appellate Procedure.


_____
TIM McCORMACK, JUDGE

MARY J. BOYLE, A.J., and
MARY EILEEN KILBANE, J., CONCUR